```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
ANTHONY HARRY,                                              :
                                                            :     **MEMORANDUM**
                            Plaintiff,                      :     **DECISION AND ORDER**
                                                            :
            - against -                                     :     18-cv-1822 (BMC) (LB)
                                                            :
POLICE OFFICER DOMENICK                                     :
LAGOMARSINE and SERGEANT DONALD                             :
KIPP,                                                       :
                                                            :
                            Defendant.                      :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

In this false arrest action under 42 U.S.C. § 1983, plaintiff *pro se*, in a series of recorded phone messages, threatened to sexually assault and kill defendants' attorney because he didn't like her attitude when they were discussing discovery. She was sufficiently shaken that she had to be taken off the case. She swore out a criminal complaint against him, the proceedings on which are currently pending.[1] Plaintiff's conduct is intolerable in this Court and the only adequate remedy is to grant defendants' motion to dismiss with prejudice.

## BACKGROUND

This is a stop and frisk case. Plaintiff was frisked by two New York City police officers, allegedly without probable cause, but not further detained. The stop and frisk apparently

---

[1] People v. Harry, No. 2018-45522 (N.Y.C. Criminal Court, New York County). It appears that plaintiff was arraigned on aggravated harassment, second degree (N.Y. Penal L. 240.30(1)(A)), and harassment, second degree, (N.Y. Penal L. 240.26). See
https://iapps.courts.state.ny.us/webcrim_attorney/Detail?which=charge&docketNumber=oLvDKBmqCTD6fRYQt8qcXA==&countyId=ftUCLXxA/VgUxT4CDSVwBw==&docketId=FNp8dj5jU12ab/YAVOlJ7A==&docketDseq=o6PDyKIx4BvSfbvyCgDnHw==&defendantName=Harry,+Anthony&court=New+York+Criminal+Court&courtType=L&recordType=C&recordNum=FwM8sO96b9cgCdlQHRSAMQ== .

occurred as police were looking for a purse snatching suspect in the area. After confirming plaintiff's identity and that he had no outstanding warrants, the officers told plaintiff to go on his way (using offensive language). The stop lasted about 25 minutes. Plaintiff alleges that the Civilian Complaint Review Board found the stop and frisk "illegal."

This is plaintiff's fourth case in this Court under 42 U.S.C. § 1983 since 2006. He has also filed four cases in the Southern District of New York during the roughly the same period, one of which is discussed below. Most of his cases were dismissed, although at least two settled for nominal amounts of $250 and $1000. It is also apparent from the past cases that plaintiff, unlike the brief detention on the street in this case, has spent some amount of time in custody.

At the conference in this matter before Judge Bloom, the transcript discloses that the Assistant Corporation Counsel assigned to this case was ill and had almost entirely lost her voice. After the conference, plaintiff met with defense counsel outside of the courtroom. As described in defense counsel's submission, plaintiff kept cutting her off when she tried to speak. When she asked him to let her finish, he became irate and stormed off briefly, but then returned and stood next to her as she was preparing to leave. He followed her to the elevator bank, and she felt that he was blocking her entry to the elevator, standing close to her, and shouting. According to her, he attempted or threatened to spit at her. He finally got on an elevator and she waited for the next one.

A few hours later, plaintiff left a series of seven voicemail messages for defense counsel over the course of several hours. Successor defense counsel has submitted the digital recordings and I have listened to them. They include many abusive statements in a highly threatening tone. The most abhorrent are these:

- "I'm going to put you six-feet in the ground. … You're dealing with the wrong one, I'm going to smack you upside the head."
- "[I am] going to disrespect you," and she should "have someone else assigned to this case, because [I am] going to fucking crack [your] skull open."
- "[I]f you want to talk about dick, and sucking dick, alright that's fine, how about you suck a dick? How's that? How about you suck a dick and get a dick up your ass you fucking ho? How's that you fucking bitch? You ugly looking piece of shit? How's that? How do you like that? Let that be a fucking reminder to you."

Defendants have moved to dismiss based upon this conduct. In his response, plaintiff denies that he got close to opposing counsel, or blocked her from the elevator, or attempted to spit on her. He adds that (1) while they were outside Judge Bloom's courtroom conversing, he thought the ACC swore at him under her breath; (2) she ignored him when he tried to press her for details about a confidentiality stipulation; (3) he has already been punished for his misconduct because he received a desk appearance ticket from Manhattan Criminal Court; (4) he was under the influence of alcohol when he left the voicemails, which has impaired his memory so that he doesn't remember what he said on the voicemails (he lacks computer equipment to listen to the recordings); and (5) he "never specifically said that [he] will kill counsel" and never intended to "specifically sexually threaten counsel."

## DISCUSSION

District courts within the Second Circuit have repeatedly dismissed cases pursuant to their inherent authority for conduct comparable to and sometimes less egregious than what plaintiff has done here. In Kalwasinski v. Ryan, No. 96-cv-6475, 2007 WL 2743434, at *1 (W.D.N.Y. Sept. 17, 2007), plaintiff *pro se* wrote a letter saying that his associates had obtained defendants' personal information and were going to "murder these defendants and their families." In Nelson v. Eaves, 140 F. Supp. 2d 319, 320 (S.D.N.Y. 2001), the plaintiff *pro se* wrote to defense counsel that "I should kill you, but I won't. I'm a let you go," and "Your [sic]

3

too bold … the brave always dies first," as well as other matters that were sexually graphic and threatening in tone. In Sunegova v. Village of Rye Brook, No. 09-cv-4956, 2011 WL 6602831, at *5 (S.D.N.Y. April 28, 2011), the offensive communication was a poem in which the plaintiff *pro se* wrote, "I took the bullet and I wrote [counsel's name] on it" and "My brain is the killer I be the winner." In Cameron v. Lambert, No. 07-cv-9258, 2008 WL 4823596 (S.D.N.Y. Nov. 7, 2008), the plaintiff *pro se* slammed the table and threatened to break opposing counsel's jaw during the deposition. These courts all dismissed, or recommended dismissal of, the cases before them with prejudice.

I recognize that dismissal with prejudice for abusive conduct is a last resort, to be undertaken only after consideration of less severe sanctions. See Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007) (quoting John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988)). This is a particularly apt consideration in this case because in at least some of the cases dismissing for misconduct, the misconduct re-occurred after an initial warning. However, my options are limited, the conduct is as appalling as it gets, and additional factors compel the conclusion that dismissal is the only appropriate sanction.

First, since he is proceeding *in forma pauperis*, monetary sanctions are not a realistic option. See Paige v. Lacoste, No. 10–CV–3356, 2014 WL 4804866, at *4 (E.D.N.Y. Sept. 26, 2014).

Second, it is not as if this particular *pro se* plaintiff should require a warning as had a warning previously. He is an experienced serial litigant, having prosecuted about ten cases here and in the Southern District of New York. He knows or should know how to conduct himself in a civil case. Most significantly, he has engaged in similar conduct in at least one of his prior

4

cases. In Harry v. Doe, No. 05-cv-8131 (S.D.N.Y. June 19, 2006 and June 30, 2006) [23, 25], Judge Chin found that plaintiff had

> exhibited behavior that has been disruptive, abusive and threatening. Specifically, on both days Harry – under the guise of attempting to ascertain the status of his case – has called the *pro se* office repeatedly, at times berating the staff with abusive language, and at other times calling over and over and hanging up, so much so that the telephone line in the office has been continually busy, making it difficult for other *pro se* litigants with legitimate questions to reach the office. Indeed, the Court was advised that at one point Harry was calling every ten seconds for several hours. The Court notes that Harry was incarcerated at the time he filed this lawsuit but is now apparently out of prison.

Judge Chin ordered plaintiff to show cause why the case should not be dismissed based on this conduct. Although he ultimately determined not to dismiss based on plaintiff's apology, he enjoined plaintiff from telephoning the Court, the *pro se* office, and the Marshal's office, permitting plaintiff to communicate with the Court only in writing.[2] Thus, plaintiff has already been warned of the consequences of unacceptable conduct.

Third, plaintiff's excuse for his misconduct is troubling. Basically, he asserts that he has an alcohol problem and when he drinks, he loses both control and memory of what he does. That gives me no assurance that he won't engage in similar or worse conduct again.

Fourth, he has effected a permanent change in defendants' representation in this case. The original ACC quite understandably felt threatened and had to have the case reassigned. She is not coming back, and plaintiff should not achieve any reward for having threatened to kill and sexually abuse her.

---

[2] In the instant case, plaintiff has given, at best, a half-hearted apology. Judge Bloom convened another conference based on newly-assigned defense counsel's disclosure of these events. At the conference, plaintiff continually attempted to justify his conduct because of his belief that former defense counsel had sworn at him under her breath, but plaintiff admitted that he should not have reacted the way he did.

5

Finally, it is important for purposes of general deterrence to make it clear that conduct like this will not be tolerated. A substantial part of this Court's docket consists of *pro se* cases. As Judge Weinfeld observed, "The fact that one appears *pro se* is not a license to abuse the process of the Court and to use it without restraint as a weapon of harassment and libelous bombardment." Kane v. City of New York, 468 F. Supp. 586, 592 (S.D.N.Y. 1979). In addition, there is a growing number of women attorneys in the profession,[3] and threats of violence and sexual abuse simply cannot be countenanced. Plaintiff's sexual remarks towards defense counsel were gender-based, but no attorney, regardless of gender, should have to tolerate being put in fear of their lives or bodily integrity.

**CONCLUSION**

Defendants' motion to dismiss [33] is granted. Their motion to stay pending determination of the motion to dismiss [43] is denied as moot. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

                                                                                                U.S.D.J.

Dated: Brooklyn, New York
       March 13, 2019

---

[3] See *ABA National Lawyer Population Survey*, American Bar Association, https://www.americanbar.org/content/dam/aba/administrative/market_research/National_Lawyer_Population_Demographics_2008-2018.authcheckdam.pdf (last visited Mar 12, 2019).